IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                               No. 06-20129-B

BILLY BROWN,

    Defendant.

---

**ORDER DENYING MOTION TO SUPPRESS**

---

Before the court is the motion of the Defendant, Billy Brown, to suppress evidence obtained during a stop and search on or about January 17, 2006. The Defendant was charged in a one-count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). In the instant motion, the Defendant claims that (1) the investigative stop was not supported by reasonable suspicion, (2) seizure of Brown was unreasonable and in violation of the Fourth Amendment and (3) any statements made by him at the scene should be suppressed in violation of the Fourth, Fifth and Sixth Amendments.[1]

At the hearing on Defendant's motion, the Government called Officer Veronica Carson, a four-year employee of the Memphis, Tennessee Police Department, who stated that at around 8:00 p.m. on the date of Brown's arrest, she was patrolling the area of Park and Haynes, which is her assigned ward. She had come on duty at 2:00 p.m. and her shift ended at 9:40 p.m. When she came

---

[1] The last argument was not addressed at the hearing. Therefore, the Court assumes it has been abandoned.

upon the Y&M Foodmart, she was on the lookout for suspicious or criminal activity, as she was familiar with the location and had made numerous arrests on the store's parking lot. The witness claimed that she observed the Defendant and another unknown male black on the lot and eyed the Defendant holding what she believed was an open beer bottle in a bag. She stated she initially intended to instruct him to go somewhere else and therefore drove onto the lot, drawing their attention. Carson asked Defendant his name but he turned around and made movements toward his rear pocket as if, as she described, he wanted to touch but not touch whatever was there. She instructed Brown and his companion to take their beer to a different location, but noted that Defendant avoided eye contact and made no verbal response to her. She then asked the Defendant his name and he walked away as if he did not hear her, his hand again hovering over his rear pocket.

At that point, because she believed Brown may be involved in suspicious activity beyond having an open beer bottle, the officer stopped him and performed a patdown search for what she described as officer safety. Her custom is that whenever she has personal contact with an individual, she does a patdown for her safety for the presence of guns or drugs. The frisk was a cursory one, however, during which she did not actually reach into his pockets. She then asked the Defendant for his identification and, when he reached for his wallet, she saw a weapon in his right rear pocket. She placed handcuffs on the Defendant and called for back-up. Carson retrieved the weapon, placed the Defendant in her car and checked for outstanding warrants. It was determined that Brown was wanted on another warrant and that the gun was not stolen.

Upon questioning by defense counsel, the officer stated that she believed Brown may have been violating the city ordinance for loitering, codified at Section 10-8-9 of the Municipal Code of the City of Memphis. She also concluded that Brown had violated Section 7-4-15 of the City Code,

which prohibited open containers and consumption of alcoholic beverages in certain public places.

Carson could not recall whether she had observed signs prohibiting drinking or alcohol on the premises of the convenience store or actually seeing Brown exit the store. Nor could she remember what happened to the beer bottle in Brown's possession.

Called as a witness by the Defendant was Carmine Spencer, who lived in the area of Park and Haynes approximately five to six blocks from the Y&M Foodmart. He had known Defendant from the neighborhood for approximately fifteen years. On the date in question, Spencer recalled seeing the Defendant at the store and stated that, at the time he saw him, it was already dark. Upon entering the store, Spencer stated that he saw Brown buying a beer which was placed in a sack. Spencer also picked up a beer and believed he was approximately two persons behind the Defendant in the queue as Brown made his purchase. He did not see Defendant open the beverage container. About three or four minutes after Brown left the store, Spencer recalled that a male officer entered the establishment and instructed the patrons to remain inside. Spencer did not look outside after the Defendant exited until the male officer came to the door asking whose car was outside. Spencer believed that the officer knew he, Spencer, did not have a driver's license. He later saw a beer near the front tire of the police car, but did not think it was open. The witness could not remember if the Defendant spoke to anyone outside, although several people had congregated in the lot.

The Defendant testified that he had gone to the store to buy beer for a family member. He recalled seeing Spencer inside and asked for a ride. After completing his purchase, Brown stated that he went outside and stood by the car when the police pulled up behind him. He claims that he showed the officer the beer, which was not open, and was asked if he had identification. Brown replied that he did. At that point, Brown contends that the officer made further contact with him

3

after advising him to leave and that he was then patted down.  He insisted he did nothing to cause Officer Carson to reinitiate contact.

The Fourth Amendment guarantees that the "right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . ."  U.S. Const. amend. IV.  "While an arrest must be supported by probable cause, the police officers are also permitted to make a reasonable investigatory stop, even in the absence of probable cause, as set forth by the Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).  "A police officer may conduct an investigatory search and seizure so long as the officer is able to point to specific and articulable facts which give rise to a reasonable suspicion of criminal activity."  United States v. Long, 464 F.3d 569, 572-73 (6th Cir. 2006), pet. for cert. filed (No. 06-8863) (Dec. 29, 2006) (citations and internal quotation marks omitted).

In addition, the Court must determine "whether the degree of intrusion was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances."  United States v. Caruthers, 458 F.3d 459, 464 (6th Cir. 2006), cert. denied, ___ U.S. ___, 127 S. Ct. 752, 75 U.S.L.W. 3295 (No. 06-7630) (U.S. Dec. 4, 2006) (citing United States v. Davis, 430 F.3d 345, 354 (6th Cir. 2005)) (internal quotation marks omitted).  "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience."  Terry, 392 U.S. at 27, 88 S. Ct. at 1883.

"[R]eviewing courts must look at the totality of the circumstances of each case to see whether

the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." United States v. Garrido, 467 F.3d 971, 981 (6th Cir. 2006) (citing United States v. Arvizu, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002)) (internal quotation marks omitted). "Moreover, the totality of the circumstances approach allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." Id. (quoting United States v. Martin, 289 F.3d 392, 398 (6th Cir. 2002)) (internal quotation marks omitted).

"[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual [or] ask to examine the individual's identification . . . as long as the police do not convey a message that compliance with their requests is required." Florida v. Bostick, 501 U.S. 429, 434-35, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991) (internal citations omitted); see also United States v. Atchley, ___ F.3d ___, 2007 WL 148761, at *5 (6th Cir. Jan. 23, 2007). In addition, an officer may conduct a patdown search or frisk for weapons if he has a reasonable suspicion to believe that he was dealing with a possibly armed and dangerous suspect. Michigan v. Summers, 452 U.S. 692, 698, 101 S. Ct. 2587, 2592, 69 L. Ed. 2d 340 (1981); United States v. Vite-Espinoza, 342 F.3d 462, 466 (6th Cir. 2003), reh'g and suggestion for reh'g en banc denied (Nov. 21, 2003).

In support of his argument for suppression, Brown posits that the open container prohibition did not apply to the Y&M Foodmart parking lot and, therefore, that the officer could not have formed a reasonable suspicion that criminal activity was afoot. The ordinance states in pertinent part as follows:

> It is unlawful for any person or persons, while in or on any streets, sidewalks, alleyways, parking areas, bus and trolley stops and shelters, or other open areas

> operated and controlled by the city within the central business improvement district . . . to consume any alcoholic beverage . . . or to possess for the purpose of consumption any such alcoholic beverage, unless such beverage remains commercially sealed.

Mun. Code of Memphis, Tenn. § 7-4-15(A). He avers that, in order for the ordinance to apply, a person must be in an area "controlled by the city within the central business improvement district," which the convenience store is not.

"In all cases of statutory construction, the starting point is the language employed by" the legislature. Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Comp. Programs, 473 F.3d 253, 266 (6th Cir. 2007) (citation omitted). "Moreover, where the statute's language is plain, the sole function of the courts is to enforce it according to its terms." Id. Defense counsel has offered no case law supporting his somewhat strained reading of the ordinance. In the Court's view, the plain language of the statute indicates that the "controlled by the city" phrase refers only to the "and other open areas" language following the comma. Thus, the Court concludes that the open container ordinance would be applicable to an individual on the lot of the Y&M Foodmart.

The Court also finds credible Officer Carson's testimony that it was her belief the beer bottle was open at the time she observed the Defendant. Her suppression hearing testimony is bolstered by the arrest ticket, attached as an exhibit to Brown's motion, in which she noted that the beer bottle appeared to be open. Further, as the Supreme Court has noted, "the fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a Terry analysis." Illinois v. Wardlow, 528 U.S. 119, 124, 120 S. Ct. 673, 676, 145 L. Ed. 2d 570 (2000). "[N]ervous, evasive behavior is [also] a pertinent factor in determining reasonable suspicion." Id., 120 S. Ct. at 676. A Terry stop is a minimal intrusion, "simply allowing the officer to briefly investigate further. If the officer does not learn facts rising to the level of probable cause, the individual must be allowed to

6

go on his way." <u>Id.</u> at 126, 120 S. Ct. at 677.

In this case, based on the totality of the circumstances, the officer's belief that the beer bottle was open, the fact that she had made numerous arrests on the Y&M parking lot and Brown's evasive behavior constitute specific and articulable facts giving rise to a reasonable suspicion on Carson's part that Brown was engaged in criminal activity. <u>See</u> <u>Long</u>, 464 F.3d at 572-73. Accordingly, the investigative stop was not violative of the Fourth Amendment. <u>See id.</u> When she observed the gun and became aware that Brown was wanted on an outstanding warrant, probable cause existed for his detention and arrest. <u>See id.</u> at 573 ("after discovery of the gun there was probable cause to arrest . . . and to conduct a search incident to arrest").

For the reasons articulated herein, the motion to suppress is DENIED.

IT IS SO ORDERED this 12th day of February, 2007.

                               s/ J. DANIEL BREEN
                               UNITED STATES DISTRICT JUDGE